## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTOPHER TODD RUGGIERI,** ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No.: 2:18-CV-0476-VEH |
| **THE CITY OF HOOVER, MELINDA JAMES LOPEZ, MESHA DACUS,** ) ) ) ) | |
| Defendants. ) | |

# MEMORANDUM OPINION AND ORDER

**I. INTRODUCTION**

*Pro se* Plaintiff Christopher Todd Ruggieri alleges a violation of the Americans with Disabilities Act ("ADA") and the Health Insurance Portability and Accountability Act ("HIPAA"). (*See* Doc. 1 at 3).

Before the Court are two motions. Defendant City of Hoover (the "City") filed a Motion To Dismiss on May 1, 2018. (Doc. 6). Defendants Melinda James Lopez and Mesha Dacus filed a Motion To Dismiss on the same day. (Doc 7). Plaintiff Ruggieri responded on May 8. (Doc. 14). Defendants filed a joint reply on that same day. (Doc. 15). Mr. Ruggieri then filed a sur-reply three days later. (Doc. 16). Accordingly, this Motion is ripe for review. For the reasons stated in today's opinion, the motions are

due to be **GRANTED** in part and otherwise **DENIED**.

II.     FACTUAL ALLEGATIONS

Consistent with the standard at the motion to dismiss stage, the Court accepts all the alleged facts in Mr. Ruggieri's Complaint to be true for the purpose of these motions. For the reader's benefit, the Court summarizes what Mr. Ruggieri alleges occurred.

Mr. Ruggieri worked for the City in Information Technology. (*See* Doc. 1 at 8). Ms. Lopez and Ms. Dacus also worked for the City. (*See id.* at 2,8). In July 2017, Ms. Lopez and Ms. Dacus ordered Mr. Ruggieri to "undergo psychiatric counseling." (*See id.* at 8). Mr. Ruggieri recorded this conversation and believes the counseling was unrelated to job performance. (*See id.*).

Mr. Ruggieri attended counseling with Dr. Lita Clark. (*See id.*). Dr. Clark told Mr. Ruggieri "that the City of Hoover, through Mesha Dacus, was requiring [him] to waive [his] HIPPA [sic] rights." (*See id.*). "Dr. Clark instructed [Mr. Ruggieri] that if [he] refused then the sessions would terminate and the City would terminate [his] employment." (*See id.*). Mr. Ruggieri recorded his therapy sessions. (*See id.*).

"After the third session, [Mr. Ruggieri] was released from counseling with Dr. Clark stating there was nothing wrong." (*Id.*). "[Mr. Ruggieri] brought [his] concerns over why [he] was sent to counseling . . . to Mesha Dacus, the City of Hoover

2

Assistant [Human Resources] Director the same day of [his] release." (*Id.*). "Less than a week later, [Mr. Ruggieri was] called into [Ms. Lopez's] office again, told [his] fears were unfounded, but that [he was] now forbidden from recording any further communications." (*Id.*).

Mr. Ruggieri filed an EEOC charge on December 21, 2017. (*See* Doc. 6-1).[1] The EEOC issued a right to sue notice on January 3, 2018. (*See* Doc. 1 at 9). Mr. Ruggieri filed this federal lawsuit on March 26, 2018. (*See generally id.*).[2]

## III. STANDARD

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* FED. R. CIV. P. 12(b)(6) ("[A] party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement

---

[1] The rule is that:

[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999).

*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The EEOC charge meets these two requirements, and the Court considers it here.

[2] Mr. Ruggieri has filed with the Court the oral conversations he recorded that were not attached to his Complaint. (See Doc. 17). The Court does not address these oral recordings because Mr. Ruggieri does not have to provide evidence for the Court to believe his allegations. At this stage, the Court accepts the factual allegations in his Complaint as true.

3

of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting FED. R. CIV. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* FED. R. CIV. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## IV. ANALYSIS

### A. The City's Motion Is Due To Be Granted in Part and Otherwise Denied

#### 1. ADA

The City argues that the ADA claim "is due to be dismissed because [Mr. Ruggieri] failed to file a charge of discrimination with the EEOC alleging discrimination based on disability." (*See* Doc. 6 at 1). Indeed, Mr. Ruggieri's EEOC charge does not check the box indicating that he was alleging "discrimination based on" "disability." (*See* Doc. 6-1 at 2) (capitalization omitted). He checked the box for

5

"discrimination based on" "other." (*See id.*) (capitalization omitted). Mr. Ruggieri wrote the following:

> I was hired by the above-named employer on July 6, 2015, as a Network Systems Analyst. My immediate supervisor was Melinda James Lopez, CIO. I reported that my organization was not PCI compliant of which Ms. Lopez was aware. On July 6, 2017, I was forced into anger management counseling. I was the only one in my department required to do so, thereby showing it was inconsistent with job requirements and business necessity. Thereafter I was consistently being subjected to verbal disciplines, and I did not receive my annual review or step increase. On October 11, 2017, I was placed on administrative leave pending an investigation. On November 16, 2017, I was informed that internal documents were found on my computer and that I was using my computer for personal gain. I was accused of unethical behavior and it was at that point I resigned my position on November 16, 2017.
>
> I believe that I was discriminated against and singled out however, I cannot identify a basis for my filing my charge.

(*Id.*).

The City relies on the *McWhorter* decision to support dismissal. (*See* Doc. 6 at 2-5) (citing *McWhorter v. Nucor Steel Birmingham Inc.*, 304 F. Supp. 3d 1185 (N.D. Ala. 2018)). In that case, "the EEOC charge as drafted gave no notice whatsoever to [d]efendant that [p]laintiff was claiming age or disability discrimination, or retaliation because of opposition to age or disability discrimination or participation in any age or disability proceeding." *See McWhorter*, 304 F. Supp. 3d at 1192-93. This was because the plaintiff did not check the box corresponding to "age" and "disability" and his intent to bring those claims could not be gleaned from his written description.

*See id.* at 1191. Here, the Defendants argue that this case is factually analogous. (*See* Doc. 6 at 2-5).[3]

However, this case is distinguishable in a significant way. Here, unlike in *McWhorter*, Mr. Ruggieri is *pro se*. *See McWhorter*, 304 F. Supp. 3d at 1192; (*see* Doc. 16 at 1) (implying that Mr. Ruggieri prepared the EEOC charge without the benefit of an attorney). The court in *McWhorter* noted that "[c]ourts have broadly interpreted the scope of administrative charges filed by unrepresented parties." *Id.* at 1192 (citing *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)). The Eleventh Circuit in *Gregory* noted that "[c]ourts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII].'" *Gregory*, 355 F.3d at 1280 (citing another source).[4] "As such, [the

---

[3] Mr. Ruggieri submitted a letter he sent to the City regarding the possibility of settlement. (*See* Doc. 13 at 3-4). He also argues that it gave the City notice of his ADA claim. (*See* Doc. 14 at 3). The Defendants dispute that this was sufficient notice. (*See* Doc. 15 at 3). The Court need not address this argument, as it finds that the EEOC Charge was sufficient for a *pro se* litigant.

[4] In Gregory, the Eleventh Circuit stated the following:

> After a careful *de novo* reading of Dr. Gregory's EEOC charge prepared without the assistance of counsel, and under the liberal EEOC charge strictures of *Sanchez*, <u>we hold that the district court did not err in finding that Dr. Gregory's retaliation claim was not administratively barred by her failure to mark the retaliation space on the EEOC template form</u>. The facts alleged in her EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination. That is, she stated facts from which a reasonable EEOC investigator could have concluded that what she had complained about is retaliation because of her complaints of Dr. Fuller's disparate treatment to the

7

Eleventh Circuit] has noted that "'the scope of an EEOC complaint should not be strictly interpreted.'" *Id.* (citing another source); *see also Jerome v. Marriott Residence Inn*, 211 F. App'x 844, 846 (11th Cir. 2006) ("[W]e liberally construe EEOC charges that are prepared without the assistance of counsel."). Accordingly, the Court reads Mr. Ruggieri's EEOC charge in light of his *pro se* status.

In this case, Mr. Ruggieri focuses on 42 U.S.C. §12112(d)(4)(A) as the reason he is entitled to relief. (*See* Doc. 1 at 3, 8). That statute states, in relevant part:

**(d) Medical examinations and inquiries**

. . .

> **(4) Examination and inquiry**
>
> **(A) Prohibited examinations and inquiries**
>
> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

---

hospital's administration. Specifically, shortly after being subjected to certain allegedly discriminatory acts, she was terminated. An EEOC investigation of her race and sex discrimination complaints leading to her termination would have reasonably uncovered any evidence of retaliation. *See Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 161-62 (5th Cir.1971) (noting that employee filing an EEOC complaint without the assistance of counsel are to be construed liberally, and holding that EEOC charge complaining of discharge was "reasonably related" to Title VII complaint that "she was discharged").

*Gregory*, 355 F.3d at 1280-81.

42 U.S.C. § 12112(d)(4)(A). This litigation is based on Mr. Ruggieri's EEOC charge which states, in relevant part:

> On July 6, 2017, I was forced into anger management counseling. I was the only one in my department required to do so, thereby showing it was inconsistent with job requirements and business necessity.

(*See* Doc. 6-1 at 2).[5]

What Mr. Ruggieri wrote in his EEOC charge matters. The rule is that "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Muhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994). However, the Eleventh Circuit "has noted that judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." *Gregory*, 355 F.3d at 1279-80 (citing another source).

At bottom, the City argues that Mr. Ruggieri's EEOC charge is deficient. (*See* Doc. 6 at 4-5). In order to evaluate whether this is so, the Court first examines what the baseline for a sufficient EEOC charge is. The *McWhorter* court states that "[a] charge must, at minimum, 'be in writing and ... name the prospective respondent and

---

[5] Mr. Ruggieri claims that he used "verbatim and the exact verbiage used in Title 42 U.S.C. § 12112(d)(4)(A)." (*See* Doc. 16) (emphasis added). That is not correct. A side-by-side comparison shows that he used language similar to, but not verbatim from, the statute.

... generally allege the discriminatory act(s).'" *McWhorter*, 304 F. Supp. 3d at 1191 (quoting 29 C.F.R. § 1626.6). This is because "[t]he purpose of the administrative charge is to (1) notify the employer that a charge has been filed and (2) initiate an EEOC investigation." *Id.* at 1191 (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54, 63, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984)).

Guided by the aforementioned legal authority, the Court determines that Mr. Ruggieri's EEOC charge is sufficient. (*See* Doc. 6-1 at 2). Mr. Ruggieri's EEOC charge is in writing. (*See id.*). It names the respondent – the City. (*See id.*). It generally alleges the discriminatory acts. (*See id.*) ("On July 6, 2017, I was forced into anger management counseling. I was the only one in my department required to do so, thereby showing it was inconsistent with job requirements and business necessity. Thereafter I was consistently being subjected to verbal disciplines, and I did not receive my annual review or step increase."). It states several dates in connection to the alleged discrimination. (*See id.*).

The City argues that "the charge of discrimination . . . does not mention disability discrimination or retaliation." (*See* Doc. 6 at 5). The City is right in that Mr. Ruggieri did not cite any statute in his EEOC charge. (*See* Doc. 6-1 at 2). He also did not check the "disability" box. (*See id.*). It appears that Mr. Ruggieri was reluctant to check that box because he is not alleging that he is disabled. (*Cf.* Doc. 14 at 2). Of

10

course, under the section of the ADA he is litigating, he does not have to allege that he is disabled. In the Eleventh Circuit, "§ 12112(d)(4)(A) protects employees <u>who are not disabled</u>." *See Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1310 (11th Cir. 2013) (citing *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 816 (6th Cir.2012); *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir.2007); *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir.2002); *Roe v. Cheyenne Mountain Conference Resort*, 124 F.3d 1221, 1229 (10th Cir.1997)) (emphasis added).

The City points to the sentence in the EEOC charge referring to PCI compliance to argue that it is irrelevant to an ADA claim. (*See* Doc. 6 at 4). However, the City overlooks the next sentence where Mr. Ruggieri essentially complains that the City forced him into "anger management counseling" without justification. (*See* Doc. 6 at 4); (Doc. 6-1 at 2).

Finally, the City argues the following:

[T]he fact that the EEOC's Dismissal and Notice of Rights (Doc. 1 at p. 9) was issued on January 3, 2018 (less than two weeks after the charge was submitted), without asking Hoover for a position statement, shows that the charge of discrimination was not sufficient to provide grounds for the EEOC to initiate an investigation. (Ex. A; Doc. 1 at p. 9.)[.]

(Doc. 6 at 5-6). This argument is unpersuasive for three reasons. First, the City has not provided the Court with any legal authority supporting the proposition that a quick dismissal can give an inference of an insufficient EEOC charge. (*See id.*). Second, the

11

City states that it was never "ask[ed] . . . for a position statement." (*See id.*). However, the City has not cited evidence showing this to be the case and "[s]tatements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir.1980).[6] Third, and most importantly, the text of the EEOC Dismissal and Notice of Rights states:

> <u>Based upon its investigation</u>, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.

(Doc. 1 at 9) (emphasis added). Thus, Mr. Ruggieri's EEOC charge was sufficient for the EEOC to conduct an investigation, however short. (*See* Doc. 1 at 9).

Today's decision is fact specific. The Court declines to find Mr. Ruggieri's EEOC charge deficient when it was not drafted by an attorney, meets the requirements in the Code of Federal Regulations, outlines allegations and facts tracking a provision in the ADA, and provides enough facts for the EEOC to conduct an investigation. Under these circumstances, the Court will not dismiss the case because Mr. Ruggieri did not check the "disability" box. Accordingly, the City's Motion To Dismiss the ADA claim is denied.

### 2. HIPAA

The City also argues that the HIPAA claim fails because "[t]here is no private

---

[6] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

cause of action under HIPAA." (*See* Doc. 6 at 2). The City is right.

To begin with, Justice Scalia's majority opinion in *Alexander v. Sandoval* informs this Court's analysis:

> Like substantive federal law itself, <u>private rights of action to enforce federal law must be created by Congress</u>. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 61 L. Ed. 2d 82, 99 S. Ct. 2479 (1979) (remedies available are those "that Congress enacted into law"). The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create <u>not just a private right but also a private remedy</u>. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 62 L. Ed. 2d 146, 100 S. Ct. 242 (1979). Statutory intent on this latter point is determinative. *See, e.g.*, *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102, 115 L. Ed. 2d 929, 111 S. Ct. 2749 (1991); *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 812, n. 9, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986) (collecting cases). Without it, a cause of action does not exist and <u>courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute</u>. *See, e.g.*, *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145, 148, 87 L. Ed. 2d 96, 105 S. Ct. 3085 (1985); *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* at 23; *Touche Ross & Co. v. Redington, supra,* at 575-576. "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 365, 115 L. Ed. 2d 321, 111 S. Ct. 2773 (1991) (SCALIA, J., concurring in part and concurring in judgment).

*Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (emphasis added). "HIPAA contains no express provision creating a private cause of action." *Sneed v. Pan American Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010). Ergo, "no private right of action exists under the Health Insurance Portability and Accountability Act."

13

*Crawford v. City of Tampa*, 397 F. App'x 621, 623 (11th Cir. 2010) (citing *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir.2006)).

Mr. Ruggieri replies by citing to two cases from state courts in Connecticut and New York. (*See* Doc. 14 at 2-3) (citing *Byrne v. Avery Center for Obstetrics and Gynecology, P.C.*, 102 A.3d 32 (Conn. 2014); *Arons v. Jutkowitz*, 880 N.E.2d 831 (N.Y. 2007)). However, those cases are not binding authority because this Court is a federal district court in the Eleventh Circuit. Moreover, from reading Mr. Ruggieri's brief, he does not say where in these opinions these state courts have held that an individual can bring a lawsuit directly under HIPAA. (*See* Doc. 14 at 2-3). In fact, as the Defendants note, *Byrne* says quite the opposite. (*See* Doc. 15 at 4) (citing *Byrne*, 102 A.3d at 35); *see also Byrne*, 102 A.3d at 45 (calling the fact that there is no private right of action "well settled"). There is a difference between a federal statute guiding a state court's standard of care and a federal statute providing an individual the right to sue in federal court under that statute.

Additionally, any claim that Mr. Ruggieri attempts to bring under the Health Information Technology for Economic and Clinical Health Act (the "HITECH Act") also fails for two reasons. First, nowhere in Mr. Ruggieri's Complaint is the HITECH Act mentioned. (*See generally* Doc. 1). Instead, Mr. Ruggieri mentions it in his briefs. (*See* Doc. 14 at 2-3); (Doc. 16 at 1). Second, Mr. Ruggieri has not provided the Court

any authority showing that a private individual has a right of action under that statute. Accordingly, the HIPAA claim is dismissed.

### B. The Dacus/Lopez Motion Is Due To Be Granted

#### 1. ADA

Ms. Dacus and Ms. Lopez argue that they cannot be liable under the ADA because they are individuals. (*See* Doc. 7 at 2-3) (citing *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007)). Generally, "[the ADA] does not provide for individual liability, only for employer liability." *Mason*, 82 F.3d at 1009; *see also Tobar v. Federal Defenders Middle Dist. of Ga.*, 618 F. App'x 982, 985 n.2 (11th Cir. 2015) (citing sources) ("[T]here is no individual liability under . . . the ADA.").

Mr. Ruggieri specifically complains of a violation of 42 U.S.C. § 12112(d)(4)(A) and no other section in the ADA. (Doc. 1 at 3). Again, the relevant provision states that "[a] <u>covered entity</u> shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A) (emphasis added). The key word here is a "covered entity." The ADA defines a "covered entity" as "an employer, employment

15

agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). When the ADA refers to an "employee," it is referring to "an individual employed by an employer." *Id.* at §12111(4). Ms. Dacus and Ms. Lopez are individuals, not entities.

Mr. Ruggieri has not put forward any legal authority that detracts from the Court's conclusion that he cannot sue an individual under § 12112(d)(4)(A) of the ADA. (*See* Doc. 14 at 2-3); (Doc. 16 at 1-2). Instead, he argues that dismissing the individual defendants would provide the City "another legal loophole and trick to avoid taking responsibility." (*See* Doc. 16 at 2). This argument does not detract from legal precedent and the plain language of the ADA– authority that the Court must follow. For that reason, this argument is unpersuasive.

Since the ADA does not provide for individual liability under the provision that Mr. Ruggieri alleges, the ADA claim against Ms. Dacus and Ms. Lopez is due to be dismissed.

### 2. HIPAA

The Court previously discussed how Mr. Ruggieri cannot bring a private right of action under HIPAA. That analysis is relevant here. For that reason, the HIPAA claim is dismissed.

### C. The Court Grants Mr. Ruggieri Leave To Amend his Complaint

Mr. Ruggieri asks the Court for leave to amend the Complaint "if the Court determines [he] has failed to state a claim." (Doc. 14 at 3). Today's opinion is actually favorable to Mr. Ruggieri on his ADA claim against the City. While the Court dismissed Mr. Ruggieri's other ADA and HIPAA claims, amending those claims would be futile because of the legal framework stated above. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("A district court need not, however, allow an amendment . . . where amendment would be futile.").

To the extent not futile, the Court will permit Mr. Ruggieri to submit an entirely new operative amended complaint that would totally replace the original Complaint submitted to the Court. Accordingly, the Court will grant him 14 days to amend his Complaint, if he so chooses.

### V. CONCLUSION

After consideration of the parties' arguments, this case will proceed on Mr. Ruggieri's ADA claim against the City.

In short, the Court **ORDERS** the following:

- The City's motion to dismiss Mr. Ruggieri's ADA claim is **DENIED**.
- Mr. Ruggieri's HIPAA claim against the City is **DISMISSED**.

- Mr. Ruggieri's ADA and HIPAA claims against Ms. Dacus and Ms. Lopez are **DISMISSED**.

- Mr. Ruggieri is granted 14 days to amend his Complaint, if he so chooses.

- The City's deadline to answer the Complaint is 20 days from the date of this Order, or 20 days from the date Mr. Ruggieri files an Amended Complaint (if he does so), whichever is later.

**DONE** and **ORDERED** this the 24th day of July, 2018.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge